UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brett William John Marino,                              Civil No. 11-2738 (SRN/FLN)

        Plaintiff,

        v.                                          **REPORT AND
RECOMMENDATION**

Michael J. Astrue,
Commissioner of Social Security,

        Defendant.

_____

Naomi V. Ness for Plaintiff.[1]
David W. Fuller, Assistant United States Attorney, for Defendant.

_____

Plaintiff Brett Marino seeks judicial review of the final decision of the Commissioner of

Social Security, who denied his application for disability insurance benefits. The matter was

referred to the undersigned United States Magistrate Judge for Report and Recommendation

pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claim

pursuant to 42 U.S.C. § 405(g).   The parties have submitted cross-motions for summary

judgment. (EFC Nos. 23, 24.) For the reasons which follow, it is this Court's recommendation

that the Commissioner's decision be **AFFIRMED**.

## I.     INTRODUCTION

Plaintiff Brett Marino applied for disability insurance benefits on March 30, 2007,

alleging an onset date of disability of January 1, 2000. (ECF No. 9, Administrative Record

[hereinafter "Tr."] 9.) The Social Security Administration ("SSA") awarded Mr. Marino SSI

benefits as of September 30, 2005, but denied his claim for disability benefits between January 1,

2000 and March 30, 2005. (Tr. 9, 43-44.)  Mr. Marino's request for reconsideration was denied

---

[1] Ms Ness represents the Plaintiff at the request of the Court through the Federal Bar Association's *Pro Se* Project.
The Court thanks Ms Ness for her particularly excellent representation of Mr. Marino.

on November 8, 2007. (Tr. 9.) Mr. Marino filed a request for a hearing, which was held before Administrative Law Judge George Gaffaney on April 22, 2009. (Tr. 66.) Mr. Marino appeared *pro se* and was instructed to obtain medical records for the time period prior to September 30, 2005. (Tr. 66-79.) The administrative hearing was then rescheduled so that plaintiff would have time to collect and submit medical records from the relevant time period. *Id*. Mr. Marino was advised that if he had any trouble obtaining his medical records, the court could assist him. *Id*.

Mr. Marino appeared for a second hearing on November 23, 2009 in front of Administrative Law Judge ("ALJ") Diane Townsend-Anderson. Mr. Marino appeared *pro se* and both a medical and vocational expert testified. (Tr. 9.) The ALJ held that through the date last insured, Mr. Marino did not have an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404(p) Appendix 1. (Tr. 9, 12-18.) The ALJ found that Mr. Marino was not disabled, because he retained the residual functional capacity ("RFC") to perform jobs that existed in significant numbers in the national economy. (Tr. 18-19.)

The Appeals Council denied Mr. Marino's request for review (Tr, 1-3), making the ALJ's decision final for purposes of judicial review. 20 C.F.R. § 404.981. Mr. Marino commenced this civil action on September 23, 2011 seeking review of the Commissioner's decision. (ECF No. 1.) Both parties then filed cross-motions for summary judgment. (ECF Nos. 23, 24.)

## II.    STATEMENT OF FACTS

### A.    Background

Mr. Marino was twenty-seven years old at the alleged onset of his disability in January 2000. Mr. Marino has past relevant work as a dishwasher. (Tr. 213, 300.) Mr. Marino has his high school diploma, and attended college for less than two years. During high school he was in special education classes. During his two years of college he maintained a 1.42 grade point

average. (Tr. 216-17, 312.)   During the relevant time period Mr. Marino was diagnosed with dysthymia; major depression recurring and moderate; a personality disorder N.O.S.; Asperger's Syndrome; a provisional diagnosis of schizoid personality disorder; and diabetes. (Tr. 187-88, 212.)

**B.     Medical Evidence**

Mr. Marino has a history of mental health treatment preceding his alleged onset date.  He reports that he was diagnosed with attention deficit disorder ("ADD") and a learning disability when he was a child and was prescribed Ritalin for a brief period of time when he was around seven years old. (Tr. 491.) He also reports that a counselor named Tom Zimmerman at the Pennsylvania College of Technology in Williamsport worked with him at the age of twelve and sporadically after that. (Tr. 499, 455.) He was in the army from November of 1992 to February of 1993 and was discharged for "failure to adapt." (Tr. 454, 491.) He attended St. Cloud State University for five quarters. Information from the counseling center at St. Cloud State University indicates Mr. Marino had a difficult time fitting in socially and complained of not knowing how to talk to people and carry on a conversation. (Tr. 491.) Mr. Marino tried to enlist in the Navy in 2001 but was rejected after a mental health professional consultation described him as having schizoid tendencies. *Id*. In November 1999 Mr. Marino saw Dr. Kent Davis for a psychiatric consultation and had a diagnostic assessment with Jennifer Schwanberg. (Tr. 457.) Dr. Davis raised the possibility of schizoid personality disorder. *Id*. Between the date of alleged disability onset and the date last insured, Mr. Marino saw several therapists and doctors for his disabilities, and the records are discussed in chronological order.

### 1.   September and October 2002.

In September of 2002 Mr. Marino was referred to the Central Minnesota Mental Health Center ("CMMHC") by Stearns County Human Services for a Rule 79 Diagnostic Assessment to determine if he was eligible for case management services. (Tr. 491.) At the time Mr. Marino was unemployed and homeless and had a strong body odor. *Id.*

Dale Kleinschmidt, MSW, LICSW, determined that Mr. Marino was not eligible for case management, but gave Mr. Marino a Global Assessment of Functioning ("GAF") scale score of 50[2], a provisional diagnosis of personality disorder with schizoid features, and recommended that he attend the center's day treatment program for further support and diagnostic clarification. (Tr. 492.) A supervisor at Stearns County Human Services raised the possibility that Mr. Marino had Asperger's, and Kleinschmidt agreed that further diagnostic clarification through day treatment would be helpful.  (Tr. 459.)  They arranged that Stearns County Human Services would provide housing for Mr. Marino if he agreed to enter day treatment.  *Id.*  Mr. Marino declined the board option and due to his homelessness there was no way to contact him and follow up.  *Id.*  He did not enter the day treatment program. *Id.*

### 2.   July 2003 – September 2003.

On July 21, 2003, Mr. Marino returned to CMMHC for diagnostic assessments. Dr. John Schmitz at St. Cloud Hospital had prescribed Strattera for depression related issues and Mr. Marino wanted a second opinion. (Tr. 480.)  Dr. Terry A. Lehman, M.D. performed a psychiatric evaluation and determined that Mr. Marino may have Asperger's Disorder and does have a Personality Disorder NOS (with cluster A traits). (Tr. 480-81.)  Mr. Marino then entered day

---

[2] The Global Assessment of Functioning (GAF) Scale is a rating of overall psychological functioning on a scale of 1 to 100.  *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)* 32 (4th ed., American Psychiatric Association, 1994) (hereinafter "DSM-IV").   A GAF score of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. *Id.*

treatment with CMMHC. Catherine A. LaGow, MS, LP, completed the day treatment intake diagnostic form. (Tr. 485-90.) LaGow described Mr. Marino's appearance as disheveled and unkempt, and noted that he had a limited attention span. (Tr. 488.) Mr. Marino also complained of not being able to focus all through the day, and being agitated. (Tr. 486.) Mr. Marino's contact at the St. Cloud Housing Coalition, Debbi, complained that he had to be reminded to take showers and had problems with personal hygiene. *Id.* LaGow determined that Mr. Marino was eligible for Adult Rehabilitative Mental Health Services ("ARMHS") because he had mental illnesses that impaired functioning in the areas of personal and emotional adjustment, social competency, and independent living and community skills. (Tr. 489.) LaGow also determined that Mr. Marino was not eligible for case management, had a GAF scale score of 45, and had diagnoses of Asperger's Disorder and Schizo-type Personality Disorder. (Tr. 488.) Following LaGow and Lehman's assessments, Mr. Marino was admitted into day treatment with Gary Michael Simpson, MSW, LICSW as his day treatment therapist. (Tr. 485.)

CMMHC has day treatment records from July 28 to August, 15, 2003 and from September 8 to September 19, 2003. (Tr. 475 – 79.) In Mr. Marino's treatment plan, Simpson advises 8-10 weeks of treatment. (Tr. 460.) Simpson identified improvements in daily functioning, developing appropriate stress management, and improving decision making abilities as the main treatment goals during the program. (Tr. 462.) Mr. Marino also met with Mark C. Bordewick, Ph.D., LP on July 28, 2003 to clarify his diagnoses. (Tr. 457.) Bordewick reported that Mr. Marino was vague about his current functioning, appeared unkempt, and had a strong body odor. *Id.* Bordewick planned to begin IQ testing and highlighted two possible diagnoses for Mr. Marino, Schizoid Personality Disorder if he were able to rule out the possibility of a

pervasive development disorder (such as Asperger's)[3], and Borderline Intellectual Functioning. *Id*. In the day treatment records, Simpson noted in Mr. Marino's first week of day treatment that he presented extremely poor hygiene. (Tr. 479.)  After failing to attend scheduled day treatment sessions for two weeks, Mr. Marino was discharged from the program (Tr. 477-78.)

Mr. Marino returned to the day treatment program in mid-September of 2003. His hygiene was still considered very poor, and his ongoing problem with homelessness and housing made it difficult to attend the day program. (Tr. 476.) Mr. Marino showed up for five of fifteen hours the first week of the program, but failed to show up the second week, so he was again discharged. (Tr. 475.)

### 3.  May 2004 to July 2004.

In May of 2004, Mr. Marino completed a psychological assessment through the Behavioral Health Clinic at St. Cloud Hospital, and the assessor recommended he attend the day treatment program. (Tr. 482.)  The day treatment intake form completed by Gary Simpson, MSW, LICSW, indicates that Mr. Marino was living with a friend at the time, and that he was eligible for Adult Rehabilitative Mental Health Services ("ARMHS") to address psychiatric stability, personal and emotional adjustment, social competency, and independent living and community skills. (Tr. 483.) Simpson assessed Mr. Marino's GAF score as 45. (Tr. 482.) According to the day treatment intake form, Mr. Marino did not qualify for case management services. (Tr. 484.) However, after a month of day treatment he was approved for county case management services. (Tr. 469.)

CMMHC has day treatment records from May 10 to July 23, 2004. Mr. Marino's day treatment therapist was Simpson, the same therapist from his day treatment program in 2003.

---

[3] Bordewick gave a provisional diagnosis of Schizoid Personality Disorder, which cannot occur during the course of a pervasive developmental disorder. Schizoid Personality Disorder is sometimes difficult to differentiate from Autistic Disorder or Asperger's Disorder. DSM-IV at 640-41.

(Tr. 464-74.) Mr. Marino attended approximately half of the sessions and on July 23, 2004, Mr. Marino was discharged from the day program for lack of participation, non-compliance, failure to address maladaptive personality traits, and repeated failure to attend scheduled sessions. (Tr. 464.)  In June Simpson referred Mr. Marino to Tobin Del Guidice, LP, PhD, an expert in Asperger's disorder to discuss a possible Asperger's diagnosis and a long standing pattern of social difficulties. (Tr. 470.)

Dr. Del Guidice met with Mr. Marino on June 2, 2004 and June 22, 2004. (Tr. 452-56.) Dr. Del Guidice obtained medical records from St. Cloud Hospital, which included the psychiatric evaluation performed by Dr. John Schmitz and the psychological evaluation performed by Dr. Bruce McNichol. (Tr. 452.)  Dr. Del Guidice  reported that Mr. Marino has impaired functioning socially, academically, and with regard to employment. (Tr. 453.) Specifically, Mr. Marino has difficulty picking up on social cues, nonverbal cues, and facial expressions, and must be forced to carry out basic hygienic behaviors such as showering or brushing his teeth. *Id*. Dr. Del Guidice also noted that Mr. Marino was having no problems with depression at this time, but that he had suffered from depression in the past. *Id*. Dr. Del Guidice assessed Mr. Marino's GAF score as 50 and determined that he most likely had Asperger's but wanted to speak to Dr. Zimmerman[4] about his early childhood counseling. (Tr. 452-56.)  Mr. Marino was to continue treatment with Simpson until more information about his childhood was obtained. (Tr. 452.)

### 4.  August 2005.

The record suggests that Mr. Marino attended outpatient services at Nystrom and Associates in New Brighton, and Health Partners Central Minnesota Clinics in St. Cloud during

---

[4] At different points in the record the counselor from Mr. Marino's early childhood is referred to as either Dr. Zimmer or Dr. Zimmerman. Dr. Del Guidice was unable to find any contact information for Dr. Zimmer, so those records from his childhood were never reviewed.

2005. (Tr. 498.)  There is also a reference to a psychological testing completed by Katharine

Laakso, Psy.D., LP,  on August 30, 2006. Laasko diagnosed dysthymic disorder, anxiety disorder

NOS, and ADHD. (Tr. 499.) These medical records are referenced by a treating physician, but

are not part of the administrative record.

### 5.   Records after the date last insured.

After the date last insured Mr. Marino sought additional treatment from experts in

Asperger's and Autism syndromes. On January 19, 2007, Mr. Marino started working with Dr.

Fritsche. (Tr. 495.)  In Dr. Fritsche's original evaluation he assessed Mr. Marino's GAF score as

40. (Tr. 507.) After working with Mr. Marino for four months he amended his original

evaluation of the GAF score to 35, citing major issues with compensating for changes in

environment as the reason for the lowered score.[5] (Tr. 511.) In September of 2007 and February

of 2008, Fritsche performed psychoeducational testing with Mr. Marino, where he attained a

verbal IQ score of 100, performance IQ of 96, and full scale IQ of 99, which are all within the

average range of intellectual ability. (Tr. 512-20.)[6]

Dr. Fritsche also completed a detailed clinical diagnostic interview. In his notes he states

that Mr. Marino has communication problems, and social awareness and relationship problems.

(Tr. 502-504.) Specifically, Mr. Marino fails to understand sarcasm, frequently behaves in a

socially inappropriate manner, and he tends to have an easier time communicating with people

on the internet. (Tr. 503.)  In addition, Mr. Marino is unaware of how his behavior affects others.

*Id*. Mr. Marino tends to see things in black and white terms, which comes off as combative and

aggressive. (Tr. 504-505.) In a letter to the University of Minnesota discussing necessary

---

[5] A GAF score of 31 to 40 indicates some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. DSM-IV at 32.
[6] The ALJ, Plaintiff, and Defendant all state that this study was performed in 2005. However the record indicates that Mr. Marino did not start seeing Dr. Fritsche until January 19, 2007 and the Psychiatric Testing Reports which indicate the IQ levels referenced in the ALJ opinion are dated September 9, 2007 and February 19, 2008.

educational accommodations, Dr. Fritsche advised that Mr. Marino has issues with executive skills such as time management, planning, organizing, and following through. (Tr. 539.) Dr. Fritsche also recommended that the school accommodate for Mr. Marino's Asperger's by allowing him to use certain technologies, provide him with a note taker, create clear and explicit instructions, provide structure and as much routine as possible, limit interpersonal contact, and translate complaints into clear, specific and doable behavioral requests. (Tr. 539-40.)

### C.    Plaintiff's Testimony

Mr. Marino was unrepresented at both of the administrative hearings. He was accompanied by his social worker, Brenda Iella (phonetic), to the hearing on November 23, 2009, however she did not testify. (Tr. 39.) When questioned about his symptoms between 2000 and 2005, Mr. Marino explained his condition has stayed the same since 2000. (Tr. 49.) Specifically he stated that he has difficulty understanding social cues, difficulty communicating, and difficulty holding onto jobs because of issues with work pace and working with others. (Tr. 47.) He testified that he has never worked full time, nor has he managed to stay employed for longer than three months since 1996. (Tr. 50.)  Between 2001 and 2006 Mr. Marino's income never spiked above SGA levels (Tr. 199 – 205. 220.), ranging between $225 one year, over one thousand dollars another year, and $500 another year. (Tr. 220, 46.) When Mr. Marino was employed, he primarily worked as a dishwasher or an assistant construction worker. *Id.*

Mr. Marino testified that he had attended day treatment twice between January 2000 and September 2005. (Tr. 57.) Mr. Marino also testified that he has little contact with his family, but that he does have some friends. (Tr. 48.) Marino plays video games with his friends, and sees them maybe once or twice a month. (Tr. 48, 453.)  Mr. Marino does not have any physical limitations. (Tr. 59.)

D.      **Medical Expert's Testimony**

Dr. Karen H. Butler testified at the November 23, 2009 administrative hearing as a medical expert. Butler testified that during the relevant time period, Mr. Marino was diagnosed with dysthymia and major depression recurrent and moderate under the category of 12.04 (affective disorders). (Tr. 54.) These diagnoses were supported by paragraph A criteria of anhedonia, decreased appetite, sleep disturbance, and feelings of hopelessness and helplessness. (Tr. 55.) Under the category of 12.08 (personality disorders), Mr. Marino was diagnosed with a personality disorder N.O.S., and with a provisional diagnosis of schizoid personality disorder. *Id*. Under category 12.10 (autistic disorders and other pervasive developmental disorders), Mr. Marino was diagnosed with Asperger's Syndrome. *Id*.

Butler also testified Mr. Marino had difficulty with social relationships, understanding social cues, making and keeping friends and engaging others on a sustained basis. *Id*. Dr. Butler opined that under the paragraph B criteria, Mr. Marino had marked impairments of activities of daily living because of his poor personal hygiene and because of his difficulty maintaining an independent place of residence. (Tr. 55-56.)  Dr. Butler opined that Mr. Marino had moderate impairments with social functioning, noting that he was reported to talk on the phone and that he limited his social interactions to other people and staff at the board where he lived. (Tr. 56.) Dr. Butler opined that Mr. Marino also had moderately impaired concentration, persistence, and pace. *Id*. Dr. Butler considered Mr. Marino's periods of day treatment to constitute two periods of decompensation. *Id*. Dr. Butler stated that there were no paragraph C criteria during the relevant time period, because "the meeting of that would be based on the 12.10 or functioning equivalent to that."[7] (Tr. 58.)

---

[7] It is unclear what Dr. Butler meant by this statement, as Listing 12.10 does not have Paragraph C criteria.

Dr. Butler opined that Mr. Marino has the capacity to perform simple and unskilled work with no public contact and only brief, superficial contact with co-workers and supervisors, and low-to-moderate standards for pace and production. (Tr. 58-59.)

### E.    Vocational Expert's Testimony

The ALJ presented the vocational expert, Robert A. Brezinski, with two hypotheticals. The first hypothetical was based off of Dr. Butler's posed restrictions. Mr. Brezinski determined that if an individual was limited to simple and unskilled work with no public contact, and only brief and superficial contact with others, where there would be low to moderate standards for persistence and pace, then there would be jobs in the Minnesota economy that fit those restrictions. (Tr. 61-62.) Specific examples include, polishing machine operator, assembly line type positions, and cleaner positions. (Tr. 62.)

The second hypothetical posed to Mr. Brezinski described the same individual with the same restrictions as the first hypothetical, plus an inability to deal with stresses and/or co-workers or supervisors. *Id.* Mr. Brezinski opined that if the individual was also unable to deal with stresses and/or coworkers or supervisors, and consequentially, would be absent from work more than two days a months, that there would not be any jobs for that individual in the regional or national economy. (Tr. 62-63.)

### F.    The ALJ's Decision

In order to determine whether Mr. Marino was entitled to DIB, the ALJ applied the five-step sequential evaluation process set forth by the Social Security Administration. The ALJ determined that Mr. Marino had a date last insured of September 30, 2005.  (Tr. 11.) At the first step of the analysis, the ALJ determined that Mr. Marino did not engage in any substantial gainful activity (SGA) during the period from his alleged onset date of January 1, 2000 through

September 30, 2005. (20 C.F.R. 404.1571 *et seq*; *Id.*) The second step of the evaluation is to determine whether the claimant has a medically determinable impairment that is severe, or a combination of medically determinable impairments, which significantly limits the ability to perform basic work activities. (20 C.F.R. 404.1520(c)). The ALJ determined that Mr. Marino had the following severe impairments: dysthymia versus personality disorder not otherwise specified and Asperger's syndrome. (20 C.F.R. 404.1520(c); Tr. 11.) The ALJ noted that Dr. Fritsche suggested accommodations for attention deficit hyperactivity disorder (ADHD), however that diagnosis has not been confirmed and occurred after the relevant time period. (Tr. 12.)

At the third step the ALJ determined that Mr. Marino did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 12.) Based on a review of the evidence and the testimony at the administrative hearing, the ALJ concluded that the "paragraph B" criteria were not satisfied, because while Mr. Marino had marked restrictions in activities of daily living, he had only moderate restrictions in social functioning, and moderate restrictions with regard to concentration, persistence or pace. (Tr. 12-13.) Additionally, Mr. Marino had only two episodes of decompensation. (Tr. 13.)

The ALJ also considered whether the "paragraph C" criteria were satisfied. The ALJ found that the record does not contain evidence of: repeated episodes of decompensation; such marginal adjustment that any change in the environment or increase of mental demands would cause decompensation; or a current history of one or more years' inability to function outside of a highly supportive living arrangement. (Tr. 14.) The ALJ concluded that Mr. Marino's combinations of severe impairments did not meet or equal the severity of any listing. (Tr. 12-14.)

 The ALJ determined that Mr. Marino had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: no public contact and no more than brief and superficial contact with co-workers and supervisors, and simple and unskilled work where low-to-moderate standards for persistence and pace would be acceptable. (Tr. 14.) The ALJ gave greater weight to the opinion of the impartial medical expert, Dr. Butler, than to Mr. Marino's statements concerning the limiting effects of his alleged symptoms. (Tr. 16.) The ALJ found that the medically determinable impairments could reasonably be expected to cause the alleged symptoms that Mr. Marino complained of, but that his statements concerning the intensity, persistence and limiting effects of these symptoms were not credible. (Tr. 15.)

 The ALJ determined at the fourth step that Mr. Marino had no past relevant work experience, but determined at the fifth step that Mr. Marino could perform a significant number of jobs in the national economy. (Tr. 17-18.) The ALJ relied on the testimony of the vocational expert in determining that there are at least 27,000 jobs in the state of Minnesota that fit within Mr. Marino's residual functional capacity. (Tr. 18.) The ALJ concluded that Mr. Marino did not meet the relevant statutory criteria for a finding of disability at any time during the time from January 1, 2000, the alleged onset date, through September 30, 2005, the date last insured. *Id.*

### III.    STANDARD OF REVIEW

 Judicial review of the final decision of the Commissioner is restricted to a determination of whether the decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. § 405(g); *see also Qualls v. Apfel*, 158 F.3d 425, 427 (8th Cir. 1998); *Gallus v. Callahan*, 117 F.3d 1061, 1063 (8th Cir. 1997); *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). Substantial evidence means more than a mere scintilla; it means "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938)).  In determining whether evidence is substantial, a court must also consider whatever is in the record that fairly detracts from its weight.  *See Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999); *see also Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir.1989) (citing *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).

A court, however, may not reverse merely because substantial evidence would have supported an opposite decision.  *See Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996).  "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome . . . or because we would have decided the case differently.  *Roberts v. Apfel*, 222 F.3d at 468 (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Id*.  Therefore, our review of the ALJ's factual determinations is deferential, and we neither re-weigh the evidence, nor review the factual record de novo.  *See Flynn v. Chater*, 107 F.3d 617, 620 (8th Cir. 1997); *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).  The Court must "defer heavily to the findings and conclusions of the SSA."  *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001).

## IV.   CONCLUSIONS OF LAW

The issue on appeal is whether Mr. Marino is entitled to disability benefits for the period of January 1, 2000 to September 30, 2005, his date last insured.[8]  Mr. Marino challenges the

---

[8] To be entitled to disability benefits plaintiff must be insured in the calendar quarter in which plaintiff became disabled or in a later calendar quarter in which plaintiff was disabled. 20 CFR § 404.320(b)(2).

ALJ's decision at the third and fifth steps of the analysis. After a review of the entire record, this Court concludes that the ALJ's findings at each step of the sequential analysis were supported by substantial evidence on the record as a whole. Therefore, Mr. Marino is not entitled to Social Security Disability Benefits prior to September 30, 2005.

### A.    Applicable Law

Disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). Title 20, Section 404.1520 of the Code of Federal Regulations outlines the five-step sequential process used by the ALJ to determine whether a claimant is disabled. 20 C.F.R. § 404.1520.

The disability determination requires a step-by-step analysis. *See* 20 C.F.R.§ 404.1520(a). At the first step, the ALJ must consider the claimant's work history. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the ALJ must consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). At the third step, the ALJ must consider whether the claimant has an impairment or impairments that meet or equal one of the listings in Appendix 1 to Subpart P of the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d). If the claimant's impairment does not meet or equal one of the listings in Appendix 1, then the ALJ must make an assessment of the claimant's RFC and the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant can still perform his or her past relevant work, the ALJ will find that the claimant is not disabled. If the claimant cannot perform his or her past relevant work, then the "burden shifts to the Commissioner to prove, first, that the claimant retains the [RFC] to perform other kinds of work, and, second, that

other such work exists in substantial numbers in the national economy." *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

### B. The ALJ did not err in determining that Mr. Marino did not meet or medically equal a listing at step three based on "paragraph C" criteria.

At step three, the ALJ determined that Mr. Marino did not meet or medically equal the criteria for Listings 12.04, 12.08, or 12.10. Mr. Marino argues that the ALJ failed to properly consider whether his impairments met or equaled the "paragraph C" criteria of a listed impairment. Paragraph C requires a claimant to prove the following:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need of such arrangement.

20 C.F.R. Pt. 404. Subpt. P, App. 1, § 12.04. Of the three relevant listings, 12.04 (affective disorders), 12.08 (personality disorders), and 12.10 (autistic disorders and other pervasive developmental disorders), only the affective disorder listing in 12.04 can be met or equaled using the paragraph C criteria. 20 CFR Pt. 404, Subpt. P, App. 1, § 12.04. [9],[10]

---

[9] Paragraph C criteria only apply to certain impairments. 20 CFR Pt. 404, Subpt. P, App. 1, § 12.00(A) ("There are additional functional criteria (paragraph C criteria) in 12.02, 12.03, 12.04, and 12.06.).

[10] In his "Statement of Issues," Plaintiff states that the ALJ failed to properly consider his impairments at § 12.10(c)(3) of the regulations. This appears to be an argument that the ALJ failed to properly consider paragraph C criteria with regard to Aperger's under Listing 12.10. However, there are no paragraph C criteria for listing 12.10. Listing 12.10 can only be met through paragraph A and B criteria. The Court will give Plaintiff the benefit of the doubt and construe his argument to be a challenge of the ALJ's analysis of paragraph C criteria under listing 12.04.

Mr. Marino makes no argument that the ALJ improperly reviewed the existing record as it relates to paragraph C criteria; rather, he argues that the ALJ "did not fully and fairly look into the earlier evidence of Marino's mental illness." (Plaintiff's Br. 8.)  Mr. Marino argues that had the ALJ obtained his "psychological assessment in 1999 by Dr. Kent Davis and counseling records from St. Cloud State University from that same year, such evidence might have altered the outcome of the disability determination."  (Plaintiff's Br. 8.)

### 1.   The ALJ fully and fairly developed the record.

Plaintiff argues that by not obtaining certain medical records, the ALJ failed to fully and fairly develop the record with regard to paragraph C criteria.  It is well-settled law that it is the duty of the ALJ to fully and fairly develop the record, even when the claimant is represented by counsel. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (9th Cir. 1993). The ALJ also has a duty to develop the record in order to avoid having to make his or her own inferences from medical reports. *Nevland v. Apfel*, 204 F.3d 853, 857-58 (8th Cir. 2000).

However, Mr. Marino does not assert that there are any missing records from the relevant time period.  The records Mr. Marino asserts the ALJ failed to obtain are from 1999, before the alleged onset of disability.  Any evidence from outside the disability period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." *Pyland v. Apfel,* 149 F.3d 873, 877 (8th Cir.1998). Any evidence that Mr. Marino was treated or diagnosed prior to the alleged disability onset date does not necessarily support a finding that he met or equaled the listings between 2000 and 2005. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990) (evidence of disabling emotional state outside of disability period does not prove disability during the disability period); *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (evidence of side effects pre-dating alleged onset date of limited relevance to Plaintiff's claim).

To be entitled to disability benefits, Mr. Marino must prove that the paragraph C criteria were met during the time period of alleged disability. 20 C.F.R. § 404.315.  Mr. Marino does not explain what is in the medical records or counseling reports from 1999 that would show he met the paragraph C criteria between 2000 and 2005.  Rather, he makes the bare assertion that "such evidence might have altered the outcome of the disability determination," without providing further explanation.  (Plaintiff's Br. 8).  Without specific argument or evidence that the contents of the 1999 medical records showed the presence of paragraph C criteria during the relevant time period, which did not begin until 2000, the Court finds that the missing records were irrelevant to the ALJ's decision.

Additionally, the Court notes that Mr. Marino was provided multiple opportunities to provide medical records and to inform the ALJ of any missing records.  ALJ Gaffaney rescheduled the original hearing in order to allow Mr. Marino to obtain more medical records from the alleged disability time period.  ALJ Townsend-Anderson specifically asked Mr. Marino during the second administrative hearing whether there were any additional records from the relevant time period. (Tr. 41-42.). Mr. Marino did not at that time argue that there were missing records. *Id*.  The Court finds that the ALJ did not fail to fully and fairly develop the record with regard to paragraph C criteria.

### 2. The record does not contain evidence of paragraph C criteria from the alleged onset date through the date last insured.

Mr. Marino does not point to any evidence in the record as it stands that supports the existence of paragraph C criteria during the period from 2000 to 2005.  Having reviewed the record, the Court finds that the record as a whole supports the ALJ's conclusion that Mr. Marino did not meet or equal the listings, specifically paragraph C criteria, during the relevant time period.

The record does not show any "repeated episodes of decompensation, each for an extending duration." 20 CFR Pt. 404, Subpt. P, App 1, § 12.04. An episode of decompensation is defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning." *Id.*at § 12.00(B)(4). To qualify under the listings, the episodes must be two weeks or longer each in length, and they must occur at least three times a year or at an average of once every four months. *Id.* The ALJ determined that Mr. Marino suffered two episodes of decompensation between 2000 and 2005, which does not meet the listing criteria. (Tr. 13.) Even if the ALJ were to consider every instance of intake into a day treatment program as a period of extended decompensation, whether or not Mr. Marino actually attended treatment, that would add up to only one period in 2002, two periods in 2003, and one period in 2004.  (See Tr. 458-59, 464-74, 476, 485.)  Even under that generous reading of the record, Mr. Marino would not meet the listing criteria.

Similarly, there is no evidence in the record that any minimal increase in mental demands or any changes in Mr. Marino's environment caused any of the episodes of decompensation mentioned above. *See* 20 CFR Pt. 404, Subpt. P, App. 1, §12.04.  Finally, there is no evidence that suggests that Mr. Marino cannot function outside of a highly supportive living environment, or that any of the group homes that he lived in during the period of review would qualify as highly supporting living environments. While the ALJ did find that Mr. Marino had marked impairments in maintaining activities of daily living, this finding was based primarily on Mr. Marino's poor hygiene. (Tr. 12.) The record as a whole supports the ALJ's finding that Plaintiff did not meet or equal the listings, specifically the paragraph C criteria, from the alleged disability onset through his date last insured.

### C.      Substantial evidence supports the RFC assessed by the ALJ.

Mr. Marino argues that the RFC assigned by the ALJ is not supported by substantial evidence on the record as a whole.  The ALJ found that Mr. Marino retained the residual functional capacity to perform work that is simple and unskilled with low to moderate requirements for persistence and pace, with no exertional limitations, limited to no public contact, with brief and superficial contact with supervisors and coworkers.  Mr. Marino argues that when calculating his RFC, the ALJ improperly discredited Mr. Marino's claims of debilitating symptoms and failed to fully evaluate the medical evidence in the record.

### 1.  The ALJ properly discredited Mr. Marino's claims of debilitating symptoms.

The ALJ found that Mr. Marino's claims of debilitating symptoms were inconsistent with the medical record as a whole and therefore not entirely credible. (Tr. 14-17.)  The determination of a claimant's RFC is based on all relevant evidence, including medical records, physician's opinions, and the claimant's description of his or her limitations. 20 CFR § 404.1545(a). *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). The ALJ determined that Mr. Marino's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but discredited Mr. Marino's testimony insofar as the intensity, persistence and limiting effects of the symptoms he described were inconsistent with the RFC. (Tr. 15.)  In evaluating Mr. Marino's claims for credibility, the ALJ considered the factors set out in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), including:

1. The claimant's daily activities;
2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;

5. Treatment, other medication, the claimant receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g. lying flat on his or her back, standing for 15-20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the claimant's functional limitations and restrictions due to paint or other symptoms.

The ALJ noted that Mr. Marino had difficulties with the activities of daily living, specifically problems with personal hygiene and with maintaining a residence. However, the ALJ also noted that there was evidence in the record of daily activity that undercut Mr. Marino's claims of total disability. The ALJ noted that Mr. Marino was able to attend university classes during the applicable time period, and that he consistently denied having academic problems when meeting with an academic counselor. (Tr. 17.) Mr. Marino also sometimes cooks, plays video games, chats with people on the internet, and talks on the phone with friends. (Tr. 12-13.)

While Mr. Marino claimed to be unable to work because of his severe difficulties in maintaining socialization, the ALJ noted that he frequently stays with friends, plays video games with friends, and talks on the phone. (Tr. 12-13.) Rather than finding Mr. Marino totally disabled as he claimed, the ALJ accounted for his limitations in his RFC by limiting socialization to brief and superficial contact with supervisors and coworkers, and no contact with the public. *Id*.

With regard to medical treatment, the ALJ noted that Mr. Marino was largely non-compliant with recommended treatment during the relevant period. Mr. Marino regularly skipped day treatment without explanation, refused to participate in group activities, and refused to address his maladaptive personality traits. (Tr. 17.) The ALJ properly considered the sparsity of Mr. Marino's treatment records during the applicable period and his noncompliance with treatment plans in assessing his credibility. *Guilliams v.* Barnhart, 393 F.3d 798, 302 (8th Cir.

2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility."); *see also Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004) ("Infrequent treatment is also a basis for discounting a claimant's subjective complaints.").

Mr. Marino argues that the ALJ improperly considered his lack of compliance with treatment when assessing his credibility. (Plaintiff's Br. 9.) Mr. Marino argues that "a homeless, mentally ill and isolated person" may not pursue the necessary medical treatment, and the failure to comply may be "indicative of his mental illness." (Plaintiff's Br. 10.) There is no evidence in the record that supports Mr. Marino's conclusion. None of the treating physicians or therapists attributed his lack of participation in treatment during the relevant time period to his diagnosed conditions. There is a lack of medical evidence upon which the ALJ could rely in making the assumption that Mr. Marino requests, that is, that his lack of treatment during the relevant time period was caused by his symptoms, rather than indicative of a lack of severe symptoms.  Mr. Marino's lack of treatment was a proper basis upon which to discount his subjective complaints. Substantial evidence supports the ALJ's determination that Mr. Marino's subjective complaints were not entirely credible.

### 2.   The ALJ properly considered the medical records from the relevant time period.

Mr. Marino also argues that the ALJ failed to do a full evaluation of the medical records for the relevant time period when calculating his RFC.  Specifically, Mr. Marino argues that the ALJ put too much weight on the medical records from Dr. Fritsche and "only peripherally addressed other medical record."  (Plaintiff's Br. 10).  Contrary to Plaintiff's assertion, the ALJ discussed the medical records of Mr. Kleinschmidt, Dr. Lentz, Dr. Del Guidice, and Dr. Bordewick. (Tr. 12-18.) The impartial medical expert also discussed these records in detail during the hearing. The ALJ is not required to discuss every piece of evidence submitted. *See*

*Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).  The medical evidence, taken as a whole, supports the ALJ's decision.

Plaintiff also argues that the ALJ erred by never discussing the range of his GAF scores which varied from 35 to 50. *Id*. However, prior to his date last insured, all of Mr. Marino's GAF scores were between 45 and 50. (Tr. 456, 482, 288, 492.)  A GAF score of 50 is at the least severe end of the GAF score ranges showing severe symptoms. See DSM-IV at 32.  The lower scores were not assigned until after the date last insured, and therefore are not relevant to Mr. Marino's level of functioning during the disability period. (Tr. 511, 539.) *See Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984) ("burden is on the claimant to show the existence of a disability on or before the date that the insurance coverage expires").  The GAF scores for the relevant time period are not inconsistent with the ALJ's determination, as the ALJ found that Plaintiff was severely limited by his impairments, but not totally disabled.  (Tr. 11-17.)

Finally, Plaintiff argues that the RFC assigned by the ALJ does not take into account Dr. Fritsche's opinion that Mr. Marino needed to be free of distraction, needed a lot of direction, and needed clear and explicit instructions.  (Tr. 14, 539.)  However, the RFC limits Plaintiff's social interactions to limited contact with supervisors and coworkers, which reflects Dr. Fritsche's concern that Plaintiff should be free of distractions.  Further, the limitation to simple and unskilled tasks with low-to-moderate standards for persistence and pace is generally consistent with Dr. Fritsche's recommendations. Overall, Dr. Fritsche's medical opinion is consistent with the RFC determined by the ALJ, even if the ALJ did not adopt every word of Dr. Fritsche's recommendation. The Court finds that the ALJ properly determined Mr. Marino's RFC based on the substantial evidence in the record as a whole.

**D.     Conclusion**

In conclusion, because the ALJ's determination is supported by substantial evidence in the record as a whole, the Commissioner's decision to deny Mr. Marino's claim for disability benefits prior to September 30, 2005 should be affirmed.

## V.    RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  Plaintiff's Motion for Summary Judgment [ECF No. 23] be **DENIED**; and

2.  Defendant's Motion for Summary Judgment [ECF No. 24] be **GRANTED**.

3.  The Commissioner's decision be **AFFIRMED** and the case be **DISMISSED WITH PREJUDICE**; and

4.  **JUDGEMENT BE ENTERED ACCORDINGLY.**


DATED: August 2, 2012                          *s/ Franklin L. Noel*
                                               FRANKLIN L. NOEL
                                               United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before August 16, 2012, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.